IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

D. WALLACE MITCHELL,
     Petitioner,

v.                               No. 3:06-cv-00624-DRH

CHARLES A. DANIELS, Warden,
     Respondent.

## MEMORANDUM AND ORDER

HERNDON, Chief Judge:

### I.    Introduction and Background

This matter comes before the Court on Magistrate Judge Stephen C. Williams' July 29, 2013 Report and Recommendation ("the Report") (Doc. 274). The Report recommends that the Court deny D. Wallace Mitchell's ("Mitchell") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 as moot and dismiss the case.  In the alternative, the Report recommends that the Court find that petitioner committed a fraud upon the Court and dismiss with prejudice petitioner's petition as a sanction for that fraud.  Mitchell filed objections to the Report (Doc. 289).  The Government responded to those objections (Doc. 291) and Mitchell replied (Doc. 292).   The Court **ADOPTS** the Report with the following modification:  Mitchell's petition will be **DENIED with prejudice** as a sanction for fraud upon the Court and, in the alternative, **DENIED as moot.** Furthermore, the Court **FINES** petitioner Mitchell **$1,000** for his fraud on the Court.  Until he pays the sum in full to the Clerk of this Court, he is barred from filing further civil suits in this Court.

On August 14, 2006, Mitchell, *pro se*, filed a petition for writ of habeas pursuant to Section 2241 (Doc. 1).  Petitioner challenges the loss of good time credit resulting from the issue of 14 disciplinary tickets.   The Government responded arguing first that petitioner had not yet exhausted his state court remedies and second that petitioner was not entitled to relief (Doc. 16).  Petitioner thereafter replied and filed a supplement to his reply (Doc. 10, 15).   On September 28, 2009, the undersigned adopted a Report and Recommendation that this case be transferred to the U.S. District Court for the Northern District of Alabama (Doc. 59) as petitioner had been relocated in that district.  The case was subsequently transferred back to this district (Doc. 71) and the case was ultimately assigned to Magistrate Judge Williams.

The Court will not detail Judge Williams' procedural effort upon this case's return but instead, after careful review, adopts the Report's version of events (Doc. 271 at 1-4).  Needless to say, Judge Williams put forth significant judicial resources in his review of this case, including an evidentiary hearing (Doc. 227). This Court also, upon thorough examination, also adopts the Report's detailing of the evidentiary hearing (Doc. 274 at 5-11).

On July 29, 2013, pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Williams submitted the Report to the undersigned.  The Report recommends that the Court deny Mitchell's petition for a writ of habeas corpus as moot and dismiss the case.  In the alternative, the Report recommends that the Court find that petitioner committed a fraud upon the Court and dismiss with prejudice

petitioner's petition as a sanction for that fraud. The Report also recommends that respondent's motion to dismiss (Doc. 239) be denied. The Report was sent to the parties with a notice informing them of their right to appeal by way of filing "objections" by August 15, 2013. Mitchell requested, and received, several extensions of time to file objections. On November 25, 2013, Mitchell filed objections to the Report (Doc. 289).

In his response, petitioner objects to the following:[1]

1. Judge Williams' finding that the petitioner does not earn any good time credit towards his life sentence pursuant to *Glascoe v. United States*, 358 F.3d 36 (D.C. Cir. 2004).
2. Judge Williams' determination that petitioner's parole date had remained October 18, 2012 since January 8, 2007.
3. The "perjured, inconsistent, and flawed" testimony of Augustus Faller.
4. Judge Williams' attack on petitioner's credibility.
5. Findings of Fact
   a. The BOP has not been forfeiting petitioner's good time credits.
   b. Petitioner's PED cannot be affected by the forfeiture of good time.
   c. The forfeiture of petitioner's good time he attempted to restore can never be taken.
   d. Petitioner has never requested that his educational good time credits vest.
   e. Special Management Unit ("SMU").
6. Segregation as a Liberty Interest.
7. Issues with Service.
8. The Report's failure to address the errors in petitioner's Presentence Report ("PSR") raised in the petition.
9. The petitioner was "punished" for refusing to continue to be represented by Attorney Brian Trentman.
10. The Magistrate failed to conduct an evidentiary hearing regarding the alleged fraud on the Court.
11. The Magistrate is biased and erred in not finding sanctions against respondent.

Petitioner also requests an evidentiary hearing (Doc. 289 at 28).

---

[1] Petitioner lists 28 objections. However, upon review, the objections can be condensed into the following list.

Petitioner thereafter filed "supplemental objections" (Doc. 288)[2].  In these objections, petitioner again asserts misconduct on the part of the Government. Specifically, he argues that his Counselor did not mail his objections on the same day petitioner asked him to.  He then notes that he failed to include the following objections:

12. Judge Williams refused to issue requested subpoenas for inmate witnesses with similar issues.
13. Judge Williams failed to recuse himself after stating, on the record and before any evidence was presented, that he had no reason to disbelieve the Government.

The Government responded (Doc. 291).  In its response, the Government indicates that petitioner has committed another fraud on the Court.  Respondent also argues that the action should be dismissed because petitioner does not have a liberty interest at stake because his 1200 good time credits have never been and can never be forfeited (Doc. 291 at 3).

Petitioner replied to the Government's response (Doc. 292).  Petitioner again challenges Mr. Fuller's qualifications (Doc. 292 at 1-2).  He also asserts for a second time that the handwriting on the transcripts is that of Mr. Orr (Doc. 292 at 2-3).  He then accuses the Government of fraud on the court, tries to bolster his credibility, and attacks the Government's position as essentially a scheme to keep him from responding to the Report (Doc. 292 at 3-6).

The Government has not objected to the Report's recommendation that the motion to dismiss be denied.  The Court need not conduct a *de novo* review of the

---

[2] While this document was filed prior to the objections and has the EC/CMF document number of 288, it is clear from the document that it was written after Document 289.

findings of the Report for which no objections have been made. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985). Therefore, the Court adopts this recommendation and **DENIES** respondent's motion to dismiss (Doc. 239).

Since timely objections have been filed, this Court must undertake *de novo* review of the Report. 28 U.S.C. § 636(b)(1). Specifically, in making a *de novo* determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made. *Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir.1999). In making this determination, the Court may "accept, reject or modify the recommended decision." *Id.*

## II.  Analysis

Pursuant to the Court's preliminary analysis, petitioner raises 13 specific objections. The Court will address each objection, conducting a *de novo* review of the pertinent issues.

**1. Judge Williams' finding that the petitioner does not earn any good time credit towards his life sentence pursuant to *Glascoe v. United States*, 358 F.3d 967 (D.C. Cir. 2004).**

Petitioner first objects to Judge William's interpretation of *Glascoe*. Specifically, petitioner asserts that the holding of *Glascoe* does not apply to him because he claims he is entitled to the laws regarding sentencing and parole that were in effect in 1989 and *Glascoe* applies to the wrong D.C. code (a combination of old law and new law whereas petitioner is subject to the "old, old law").

However, Mitchell's objection is a misstatement of the law. As clearly indicated in *Glascoe*, the court relied on the Good Time Credits Act enacted in 1987 and repealed in 1994 to make its determination that a prisoner cannot earn good time credit towards a sentence of life. 358 F.3d at 969. Mitchell, pursuant to his own objections, is entitled to law as it was in effect in 1989, the year in which the crime was committed. Therefore, the Court finds that Judge Williams did not err in his finding that petitioner cannot earn good time credit toward his maximum sentence of life.

**2. Judge Williams' determination that petitioner's parole date had remained October 18, 2012 since January 8, 2007.**

Petitioner next objects to Judge Williams' determination that his parole date has remained October 18, 2012. In support of this assertion, petitioner provides a March 22, 2013 printout of his sentence monitoring computation data (Doc. 289 at 32).

The Court cannot credit petitioner's exhibit or his statements regarding this issue because similar exhibits have been falsified by petitioner. *See infra* Section 4. Judge Williams similarly indicated this issue in the Report (Doc. 274 at 14 n.6) and therefore relied on other evidence in the record, specifically Doc. 16-2 at 13 and Doc. 105-1 at 4. The former is a printout provided by the government of petitioner's inmate data dated January 8, 2007. On this printout, petitioner's parole eligibility date is listed as October 18, 2021. The latter, or second piece of evidence relied on by Judge Williams, is a printout of petitioner's inmate date from June 8, 2009. This printout also clearly indicates petitioner's parole

eligibility date as October 18, 2021.  Furthermore, as indicated by the testimony of Mr. Faller, petitioner's good time forfeitures do not affect his parole eligibility date.  Finally, respondent provides a correct copy of the sentencing monitoring computation data (Doc. 291-2 at 9) and the affidavit of Andrew Roush, a correctional programs specialist at the United States Department of Justice, Federal Bureau of Prisons (Doc. 291-2 at 2) indicating that petitioner's parole eligibility date has not changed from October 18, 2021.  Therefore, the Court finds that Judge Williams did not err in this finding.

### 3. The "perjured, inconsistent, and flawed" testimony of Augustus Faller.

Petitioner objects generally to the testimony of Augustus Faller.  Most of the issues raised by petitioner in these sections, labeled in the petitioner's objections as sections 3, 4, and 9, are inflammatory at best.  First, petitioner argues that Mr. Faller began working with inmates sentenced under the D.C. Code in 2000 and acknowledged that he did not have anything to do with inmates in the custody of the BOP.  These arguments are irrelevant.  At the time of the hearing, Mr. Faller was the head of the D.C. Offender Branch at the Designation and Sentence Computation Center in Grand Prairie, Texas.  He indicates in his testimony that he began working with D.C. Code offenders in September 2000 (Doc. 244 at 23-24).  He need not have worked on petitioner's specific case to testify regarding the application of good time credits.  He also need not have worked during the time of the "old, old law" in order to testify regarding it.  He is on record stating that he is familiar with the law and Mr. Mitchell's case (Doc. 244 at 23-24).

Next, petitioner asserts that Judge Williams "ignored" the contradictory testimony of Mr. Faller (Doc. 289 at 7) (emphasis in original).  Specifically that the petitioner cannot have good time taken thru disciplinary action, but it was taken and it had to be restored.  He claims that this is perjury.  In fact, the testimony of Mr. Faller is more nuanced.  He stated that petitioner cannot earn good time credit on the life imprisonment sentence (Doc. 244 at 34) but could earn good time credit on the minimum term.  While the law is admittedly confusing, Mr. Faller's testimony provides the Court with a clear explanation.

He also asserts that Mr. Faller lied about the good time forfeitures.  Specifically, petitioner argues that Mr. Faller states that the forfeitures were removed and could never be returned (Doc. 244 at 44, 71).  In fact, he asserts, these forfeitures have been returned.  In support of this assertion, petitioner provides the Court with a personal affidavit (Doc. 289 at 42-45) and a printout of his inmate education data transcript (Doc. 289 at 48).  Respondent asserts that this printout is a forgery.  In support of this assertion, respondent provides an accurate printout of petitioner's course work (Doc. 291-2 at 4-6) and the affidavit of Roush (Doc. 291-2).  Therefore, the Court dismisses this objection and finds that Judge Williams did not err on this point.

Petitioner also identifies several "lies under oath" he claims Mr. Faller made.  The Court, however will not go line by line in the transcript to correct misstatements.  These "misstatements," even if true (i.e. EGT stands for Extra Good Time or Education Good Time), are irrelevant.  Upon a thorough review of

Mr. Faller's testimony and its interaction with the evidence presentment to the Court, the Court finds, as did Judge Williams, Mr. Faller's testimony credible. Therefore, the Court concludes that Judge Williams did not err in relying on it.

### 4. Judge Williams' attack on petitioner's credibility.

Petitioner objects to Judge Williams' attack on the petitioner's character and credibility. Specifically, petitioner objects to Judge Williams' finding that an education data transcript submitted by petitioner had been altered; the sheet included handwritten zeroes. The education data transcript at issue is attached to Document 248 at 29. In his objection, petitioner asserts that the handwriting was made by Mr. Orr, of the prison's education department, because of a computer malfunction (Doc. 289 at 13-14). He further indicates that he has provided a corrected transcript (Doc. 289 at 14). The Government responds to this specific objection, asserting that petitioner has again forged the document. In support of its assertion, respondent provides the two falsified transcripts (Doc. 291-2 at 2, 3), the true and accurate transcript (Doc. 291-1 at 1), and the affidavit of Roush (Doc. 291-2). The Court finds that these documents are clearly forged. The first forgery is handwritten, and while petitioner claims that someone else, a representative of the BOP, made these changes, the Court finds that assertion especially disingenuous given petitioner's filing of a second fraudulent record.

Next, petitioner takes issue with Judge Williams' determination that petitioner "lied" regarding sending and receiving mail and legal documents. The Court assumes that petitioner is referring to footnote 6 on page 14 of the Report

in which Judge Williams states, "Petitioner has further been caught in lies regarding his sending and receiving of mail and legal documents.  He has refused to sign acknowledgments of receipt of documents so that he then could say that he did not receive the materials from Respondent."  Petitioner asserts that Judge Williams ignored the notice submitted by former counsel, Ms. Melissa A. Day and Mr. Brian K. Trentman, of interference with her correspondence with petitioner.  The Court notes that this alleged interference appears to have little to do with this specific issue.  In fact, the record clearly indicates that Judge Williams worked with petitioner and respondent to make sure that petitioner had access to his legal documents, appropriate correspondence with his attorney, and would receive his legal mail (*See, e.g.*, Doc. 136 ("Further, the Court ORDERS that Petitioner be provided meaningful access to his legal materials . . . .")).  What Judge Williams appears to be referring to in this footnote is petitioner's unwillingness to sign for materials and then his subsequent filings with the Court stating he never received them (Doc. 203-1, 226, and 230-1).

Petitioner also objects to Judge William's statement that he lied about the warden saying the petitioner's legal materials would be destroyed (Doc. 289 at 24).  Specifically, he asserts that his legal materials were mixed in with his personal property.  Again, he points to the issues his former counsel indicate they had with legal communication.  Here the petitioner appears to be referring to Judge Williams' statement, "Petitioner had stated that the Warden at Florence Correctional Center had sent him a letter stating that his legal material was going

to be destroyed, but upon inspecting the letter, the Court determined that the letter in no way suggested that legal materials would be destroyed" (Doc. 274 at 18). In support of his assertion, petitioner provides a copy of an April 13, 2013 response to an inmate request regarding access to his personal property. In this response, the warden indicates that petitioner's legal materials were intermingled with his personal property. Not only does the letter indicate that the Warden's willingness to allow petitioner to sort through his things for legal materials but is also not relevant. The issue identified by Judge Williams was the misleading nature of petitioner's characterization of the letter attached to his order at Document 199, specifically his request of materials from another institution.

Finally, and in a similar vein, petitioner objects to Judge Williams' characterization that he refused to sign receipts of documents (Doc. 289 at 25). He claims that there is no evidence supporting this conclusion. However, as previously indicated, Judge Williams relied on the filings of respondent in his conclusion. Specifically, Documents 203-1, 226, and 230-1, wherein it is clear that petitioner refused to sign for materials.

The Court therefore finds the Judge Williams did not err in any of these determinations regarding the "character and credibility" of petitioner.

**5. Findings of Fact**

Petitioner objects to several findings of fact herein listed.

**a. The BOP has not been forfeiting petitioner's good time credits.**

First, petitioner states, "The BOP has been forfeiting petitioner's good time at least since April, 1994" (Doc. 289 at 17).   In support of this assertion, petitioner provides a printout of his inmate discipline data sheet (Doc. 289 at 53). Not only is this not an objection, it is irrelevant.   As indicated by Mr. Faller, the good time credits at issue in this case have been restored (Doc. 274 at 15).

**b. Judge Williams' finding that petitioner's PED cannot be affected by the forfeiture of good time.**

Petitioner next asserts, "The Magistrate erred in holding that petitioner's PED cannot be [a]ffected by the forfeiture of good time . . ." (Doc. 289 at 18).   As previously discussed, Mr. Faller indicated and the Government supported the assertion that petitioner's parole date has remained October 18, 2021.   In fact, petitioner again provided fraudulent documentations in his objection.   The Court therefore finds that Judge Williams did not err in his conclusion that petitioner's parole eligibility date had not been affected by any good time forfeitures.

**c. Judge Williams' determination that the forfeiture of petitioner's good time he attempted to restore can never be taken.**

Petitioner also objects to Judge William's determination that "the forfeiture of petitioners good time he attempted to restore, can never be taken again" (Doc. 289 at 18).   Specifically, petitioner takes issue with the way Judge Williams presented Mr. Faller's testimony.   Petitioner argues that Mr. Faller had no idea how or why he was being told to restore the good time credits.   Petitioner further asserts that this testimony was vague regarding the parole eligibility date and that

Judge Williams essentially confused the parole eligibility date issues with that of the life term.

The Court disagrees.  While these are complex issues, Judge Williams' Report clearly indicates when it is discussing the issues regarding the life term and when it is addressing the parole eligibility date.  Furthermore, Judge Williams' determinations are based on the credible testimony of Mr. Faller.  Judge Williams did not err in his determination that this good time credit was restored.

### d. Petitioner has never requested that his educational good time credits vest.

Petitioner next asserts that Judge Williams failed to address the vesting issue.  Upon review of the Report, the Court sees no indication of vesting.  However, this is likely because the issue is irrelevant.  Petitioner appears to be simultaneously requesting the good time credits while also arguing that they have not been reinstated because he did not request them.  The Court will not entertain this argument.

### e. Special Management Unit ("SMU")

Petitioner argues that Judge Williams incorrectly interpreted the SMU.  Petitioner asserts that "the Magistrate somehow got it twisted that petitioner was arguing a liberty interest in some "future" move to higher security.  Petitioner is arguing that the incident reports that are subject of this petition, were used as part of the reasons to assign the petitioner to SMU . . ." (Doc. 289 at 27).  While petitioner may assert that this is the case at this time, it does not appear to this Court that he asserted anything other than a liberty interest when addressing his

placement prior to the issuing of the Report.   Therefore the Court finds that Judge Williams did not err in his interpretation of the SMU issue.

### 6. Segregation as a Liberty Interest

Petitioner also asserts that Judge Williams erred in finding that the 450 consecutive days in segregation did not create a liberty interest (Doc. 289 at 27-28).   The Court finds that Judge Williams did not err in this assessment. Specifically, Judge Williams found that because petitioner received at most thirty days for a single violation, that this segregation did not rise to the level of a liberty interest.   Judge Williams distinguished petitioner's case from *Marion v. Columbia Correctional Institution*. 559 F.3d 693, 698 (7th Cir. 2009).   Judge Williams' findings are supported by Document 16 and the associated exhibits.   Petitioner did not serve more than 30 days in segregation.   The Court agrees with Judge Williams reading of *Marion* and accordingly finds that Judge Williams did not err in his finding.

### 7. Issues with Service

Petitioner raises several issues with service in this case.   Specifically, petitioner asserts that Judge Williams "erred in allowing the respondent to submit exhibits and take testimony on them, even though he knew petitioner had <u>not</u> been served with the documents" (Doc. 289 at 20) (emphasis in original). Judge Williams "erred in allowing Faller to testify as no notice of him appearing as a witness was ever served on petitioner" (Doc. 289 at 20-21).

These interrelated issues are largely addressed in the petitioner's credibility section.  The Court will not take petitioner's word that he did not receive service or did not receive notice of any witnesses.  Judge Williams found that petitioner had refused to sign acknowledgment of receipts of documents (Doc. 289 at 25).  Furthermore, petitioner had his own witnesses testify and is clearly familiar with court procedure.

### 8. The Report fails to address the errors in petitioner Presentence Report (PSR) raised in the petition.

Petitioner next asserts that the Report does not address his PSR.  Specifically petitioner requested the expungement of the "incorrect" PSR.  Petitioner is correct in his assessment that the Report does not address this specific issue.  This is an understandable omission given the nature of this case.  Petitioner essentially stopped litigating this issue and instead focused on the good time credits issues.  Issues regarding the presentence report are not properly brought under Section 2241 in cases where, as is the case here, it does affect the fact or length of his sentence.  *See Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *Mitchell v. U.S. Parole Com'n*, 538 F.3d 948, 952 (8th Cir. 2008); *Montgomery v. Anderson*, 262 F.3d 641, 643–44 (7th Cir. 2001).  The Court additionally finds petitioner's note regarding this issue dubious given his obvious lack of prosecution.

### 9. The petitioner was "punished" for refusing to continue to be represented by Attorney Brian Trentman.

Petitioner next asserts that Judge Williams wanted to "punish" petitioner for refusing to continue to be represented by Mr. Trentman.  However, the Court cannot find any evidence that Judge Williams wished to "punish" petitioner. Judge Williams' order regarding the motion to withdraw notes that an *in camera* hearing occurred with petitioner and his counsel (Doc. 199).  Therein Judge Williams indicates that he concluded that petitioner and his counsel had reached irreconcilable differences.  He also stated that he would not appoint another attorney in this case.  Not only is there not any evidence supporting this allegation, the undersigned finds it incredulous that Judge Williams would in any way "punish" the petitioner.

10.     **The Magistrate failed to conduct an evidentiary hearing regarding the alleged fraud on the Court.**

Petitioner asserts that Judge Williams failed to conduct an evidentiary hearing specifically "into who wrote the zeroes "0" on petitioner's education transcript" (Doc. 289 at 23).  An evidentiary hearing is only required in those cases where there is an issue of fact.  *In re Rimsat, Ltd.*, 212 F.3d 1039, (7th Cir. 2000) ("[A] hearing is not invariably required before sanctions may be imposed."). As indicated above, there is no question in this case that petitioner committed a fraud on the Court.  An additional hearing is therefore unnecessary.

11.     **The Magistrate is biased and erred in not finding sanctions against respondent.**

Petitioner also asserts that Judge Williams is biased and erred in not finding sanctions against respondent.  Considering the previous findings and

conclusions in this Order, the Court will not entertain this argument.  The Court, however, includes it as further evidence of petitioner's disrespect of the Court.

**12.**     **Judge Williams refused to issue requested subpoenas for inmate witnesses with similar issues.**

Petitioner also asserts that Judge Williams refused to issue subpoenas for inmate witnesses with similar issues.  Petitioner appears to be addressing Judge Williams order dated March 21, 2013 (Doc. 221).  The Court first notes that this is not an objection to the Report and therefore need not be addressed. Furthermore, the Court agrees with Judge Williams' assessments regarding personal knowledge therein.  Petitioner sought a subpoena for Jeremy Brown to testify regarding good time credit.   The Court concurs with Judge Williams' conclusion that while Mr. Brown may have personal knowledge pursuant to the Federal Rules of Evidence regarding his specific good time credits, he would not be in a position to speak on the specific facts and circumstances of this case. Therefore the Court finds that Judge Williams did not err in denying petitioner's request.

**13.**     **Judge Williams failed to recuse himself after stating, on the record and before any evidence was presented, that he had no reason to disbelieve the Government.**

Petitioner next asserts that Judge Williams should have recused himself after stating on the record that he had no reason to disbelieve the Government. Petitioner has already raised this issue with Judge Williams (Doc. 214) and Judge Williams has ruled on petitioner's motion (Doc. 224).   Again, this is not technically an objection to the Report.  The Court, however, notes that it does not

find Judge Williams erred in his order.  This appears to be yet another attempt by petitioner to elongate this proceeding.

### III.   **Motion to Strike**

On December 27, 2014, petitioner filed supplemental exhibits (Doc. 293). Specifically, petitioner filed what appears to be a sentence monitoring good time data sheet as of November 2, 2013.  The Government subsequently filed a motion to strike Document 293, Supplement by petitioner (Doc. 294).  The Government asserts that petitioner's exhibit (Doc. 293) is a fraudulent copy of his good time data.  Respondent indicates eleven instances where information has been deleted or altered.  In support of this assertion respondent provides the Court with a copy of the correct good time data sheet for that period (Doc. 294-1), his housing records showing that petitioner falsified the date of the good time data record (Doc. 294-3), and petitioner's current good time data record (Doc. 294-4).

Petitioner responds, again moving for sanctions and an evidentiary hearing, asserting generally that respondent has not provided evidence of these alterations (Doc. 295).  Further, he argues that these alterations "have nothing to do with this case, and would not benefit petitioner in this case in any way" (Doc. 295 at 3).

The portion of petitioner's motion that can be construed as a motion for sanctions is **DENIED.**  The portion of the motion that can be construed as a motion for evidentiary hearing is also **DENIED.**  The Government's motion to strike Document 293 is **GRANTED**.  Once again, petitioner has tried to claim that these official print outs provided by the respondent are not accurate.   As

previously indicated, this is petitioner's third attempt to file a fraudulent version document with this Court.

### IV.   <u>Disposition</u>

Upon a thorough review of the Report and the record in this case, it has become clear to the undersigned that petitioner has committed fraud upon the Court.  Petitioner submitted two fraudulent copies of the same document with the Court.  The second document was provided after the issuance of the Report with another lie to the Court, that a Mr. Orr had made the handwritten zeroes on the first document.  Thereafter, petitioner filed a third falsified document with the Court.  Petitioner also misled the Court regarding a letter from the Warden at SMU Florence and refused to sign acknowledgement receipts of documents from respondent.  Furthermore, as the Report indicates, petitioner is a frequent flyer in the federal system and used a false name in seeking *pauper* status in this case (Doc. 274 at 23).

Pursuant to the Court's inherent authority, a dismissal with prejudice of a habeas petition is a permissible sanction for fraud upon the Court.  *Oliver v. Gramley*, 200 F.3d 465, 466 (7th Cir. 1999).  The Court must consider whether some sanction short of dismissal with prejudice is fair and appropriate.  *Id.*  The Court finds that petitioner's egregious misconduct warrants this sanction.  *See REP MCR Realty, LLC v. Lynch*, 363 F.Supp.2d 984, 1010-11 (N.D. Il. Mar. 21, 2005) (collecting cases).  The Court may additionally, pursuant to Federal Rule of

Civil Procedure 11, sanction a petitioner for filing a frivolous petition. *See Montgomery v. Davis*, 362 F.3d 956, 957-58 (7th Cir. 2004).

Therefore, the Court **DENIES** Mitchell's petition **with prejudice** as a sanction for fraud on the Court. The Court also **FINES** Mitchell **$1,000.** The BOP is **DIRECTED** to put this fine on his trust account as a debt to the Court, to be deducted from his account in amounts at the BOP's discretion pursuant to the Inmate Financial Responsibility Program. Until he pays the sum in full to the Clerk of this Court, petitioner is barred from filing further civil suits in this court.

In the alternative, the Court **DENIES** Mitchell's petition as **MOOT.** Based on the evidence on the record, the Court adopts the Report's analysis and concludes that petitioner does not have a liberty interest in this action. His good time credits have been restored and his good time credits cannot be deducted from a life term.

## V.   Other Pending Motions

Currently pending before the Court are several additional motions filed by the petitioner: Motion for Evidentiary Hearing (Doc. 236); Motion for Relief from Judgment of November 8, 2013 (Doc. 284); Motion for an Order Directing Respondent to Allow Petitioner to Mail His Objections to the Court Immediately (Doc. 285); and Motion for Sanctions (Doc. 290). For the following reasons, these motions are **DENIED as moot.** An additional evidentiary hearing is unnecessary considering there are no remaining issues of fact (Doc. 236). Petitioner's motions regarding his objections to the Report (Docs. 284, 285) are also moot as

petitioner timely filed his objections, carefully considered above by the Court. Additionally, petitioner's motion for sanctions (Doc. 290) is moot as these issues have been addressed by Judge Williams (Doc. 271).

## VI.   <u>Certificate of Appealability</u>

Finally, "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." *Rules Governing Section 2254 Cases, Rule 11(A)*.  A COA may issue only if the applicant has made a "substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).  When a district court has denied a petitioner's constitutional claims on procedural grounds "without reaching the prisoner's underlying constitutional claims," a COA should issue if jurists of reason could debate whether the petition states a valid claim of denial of a constitutional right and whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 478. The Court **DECLINES** to issue a certificate of appealability.  Here Mitchell's case has been dismissed with prejudice as a sanction for his fraud on the court and, in the alternative, as moot.  The Court concludes that reasonable jurists would not find the Court's decision debatable or incorrect.  Pursuant to Federal Rule of Appellate Procedure 22(b), Mitchell may present his request for a certificate of appealability to the Court of Appeals for the Seventh Circuit.

## VII.   <u>Conclusion</u>

Accordingly, the Court **ADOPTS** the Report (Doc. 274) with the following modifications.  Mitchell's petition is **DENIED with prejudice** as a sanction for

fraud upon the Court.  The Court additionally **FINES** petitioner Mitchell **$1,000** for his fraud on the Court.  Until he pays the sum in full to the Clerk of this Court, he is barred from filing further civil suits in this Court.  In the alternative the petition is **DENIED as moot.**

Respondent's motion to strike (Doc. 294) is **GRANTED.**  The Clerk of the Court is **DIRECTED** to strike petitioner's supplemental exhibits (Doc. 293). Petitioner's motion for sanctions (Doc. 295) is **DENIED.**

Respondent's motion to dismiss (Doc. 239) is **DENIED.**  Petitioner's Motion for Evidentiary Hearing (Doc. 236), Motion for Relief from Judgment of November 8, 2013 (Doc. 284), Motion for an Order Directing Respondent to Allow Petitioner to Mail His Objections to the Court Immediately (Doc. 285), and Motion for Sanctions (Doc. 290) are **DENIED as moot.**  Further, the Court **DECLINES** to issue a certificate of appealability.  The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

> **IT IS SO ORDERED.**
> Signed this 24th day of March, 2014.

Digitally signed
by David R.
Herndon
Date: 2014.03.24
16:05:12 -05'00'

**Chief Judge**
**United States District Court**